CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

OCT 21 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES C. GRAHAM, )<br>    Petitioner )<br> )<br>v. )<br> )<br>UNITED STATES OF AMERICA, )<br>    Respondent. ) | Civil Action No. 7:07-cv-377<br><br>By: Hon. Michael F. Urbanski<br>    United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Petitioner James C. Graham ("Graham") brings this action under 28 U.S.C. § 2255, alleging a claim of ineffective assistance of counsel, specifically that counsel failed to challenge the drug weight at the sentencing hearing; a claim that his guilty plea was involuntary; and a claim that the court lacked subject matter jurisdiction. By Order entered April 28, 2008, the case was set for an evidentiary hearing regarding Graham's claim that his counsel, David Downes, Esq. ("Downes"), was ineffective. On August 29, 2008, the court held this evidentiary hearing. Graham participated via video conference.

Based on the parties' submissions, the transcripts of Graham's July 6, 2006 proceeding and July 21, 2006 sentencing hearing, the Pre-Sentence Investigation Report ("PSR") and the evidentiary hearing testimony, the undersigned concludes that Graham has failed to show that Downes provided constitutionally deficient legal assistance. Furthermore, Graham's remaining claims for relief lack merit. In turn, the undersigned recommends that Graham's motion to vacate, set aide or correct his conviction and sentence be dismissed.

**I.**

On January 20, 2005, a grand jury in the District of Wyoming returned a two count indictment against Graham ("Wyoming charges" or "Wyoming indictment"). Count One charged that from June 1, 2004 to January 10, 2005, Graham conspired to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846. Count Two charged that on January 10, 2005, Graham possessed with the intent to distribute more than five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). PSR ¶ 2.

On April 6, 2005, a grand jury in the Western District of Virginia indicted Graham and three other defendants ("Virginia charges" or "Virginia indictment"). The Virginia grand jury charged Graham with one count of conspiring to possess with intent to distribute 50 or more grams of cocaine base, in violation of 21 U.S.C. § 846; and four counts of distributing cocaine base on June 16, 2004, November 1, 2004, November 4, 2004, and November 12, 2004, all in violation of 21 U.S.C. § 841(a)(1). PSR ¶ 1.

On July 12, 2005, Graham entered into a plea agreement. The plea agreement called for Count One of the Wyoming charges to be dismissed at sentencing. It also outlined Graham's consent to transfer and disposition for sentence in the Western District of Virginia pursuant to Federal Rule of Criminal Procedure Rule 20. Under the plea agreement, Graham was to plead guilty to Count Two of the Wyoming indictment. PSR ¶ 3.

On April 28, 2006, Graham and his counsel appeared with the purported purpose of pleading guilty. Report and Recommendation, May 19, 2006, at 1. Instead of pleading guilty, however, Graham announced that he withdrew his waiver of proceedings under Rule 20 and plea agreement. Report and Recommendation, May 19, 2006, at 1. Apparently, Graham later changed his mind, and on June 29, 2006, Graham moved to withdraw his pro se motion to

2

rescind his plea agreement and to proceed in Virginia pursuant to Rule 20. Mot. Withdraw Mot. Withdraw Rule 20 Mot., June 29, 2006, at 1. Graham also requested arraignment on the Wyoming charges be transferred to the Western District of Virginia. Mot. Withdraw Mot. Withdraw Rule 20 Mot., June 29, 2006, at 1.

On July 6, 2006, Graham pled guilty to Count Two of the Wyoming indictment and Counts One, Two, Three, Four and Five of the Virginia indictment. Crim. Mins., July 6, 2006, at 1. At the hearing, Graham indicated that he was not coerced or threatened to plead guilty, and was doing so of his own free will because he was, in fact, guilty.

A PSR was prepared which attributed to Graham a total of 1.37 kilograms of cocaine base. PSR ¶ 16. As explained in the PSR, between May and November of 2004, Graham and two conspirators distributed two ounces of crack cocaine per week, resulting in 1.35 kilograms of crack cocaine. On January 10, 2005, authorities found 12.19 grams of cocaine base on Graham's person in Cheyenne, Wyoming. PSR ¶ 16. Based upon the combined drug weight, the PSR determined that Graham's corresponding offense level to be 36, reduced by three levels for acceptance of responsibility. PSR ¶¶ 21, 27. With a total offense level of 33 and a criminal history category of IV, Graham's applicable sentencing guideline range was 188-235 months. PSR, Sent. Recom.

On July 21, 2006, Graham was sentenced to 210 months in prison for Count Two of the Wyoming charges and 60 months, to be served concurrently with the 210 months, for the Virginia charges. Sent. Hr'g Tr., July 21, 2006, at 14. The sentence included a five year term of supervised release. The judgment order was entered on July 27, 2006. Sent. Hr'g Tr., July 21, 2006, at 15.

## II.

At the August 29, 2008 evidentiary hearing, Graham explained that his "whole issue" is that he pled guilty to the Wyoming and Virginia charges only because he believed his lawyer was going to object to the drug weight at sentencing. Graham testified that he told Downes that he did not want to plead guilty to the 1.37 kilograms of crack cocaine. Allegedly, Downes responded by telling Graham to plead guilty and by assuring Graham that they would fight the drug weight at sentencing. Graham explained that, based on that alleged assurance by Downes, Graham pled guilty to the Virginia and Wyoming charges.

Graham also asserted that, at the time he pled guilty, he did not understand that he could be credited with the weight of the entire drug conspiracy. Apparently, Graham thought he would only be responsible for the cocaine base found on his person in Wyoming. Graham grounded his lack of understanding in his low-level reading skills and Downes' alleged inattentiveness. Graham testified that Downes visited Graham only twice during the course of a year at the Central Virginia Regional Jail in Orange, Virginia and did not return his phone calls. While Graham did receive the PSR in the mail one to two weeks before the sentencing hearing, Graham explained that he did not comprehend what he was reading. Moreover, Graham claimed that he and Downes never talked about the PSR in person or over the phone, and nobody else at the jail helped him to understand the document.

When cross-examined by the Assistant United States Attorney, Graham testified that he remembered his remarks from his earlier guilty plea hearing. At the guilty plea hearing, Graham acknowledged having discussed the contents of his indictment with his attorney. Guilty Plea Hr'g Tr., July 6, 2006, at 10-11. He also stated that he had discussed legal and factual defenses with his attorney, id. at 15, and had received adequate time to prepare any defenses, id. at 17.

4

When asked if he had anything to say about Downes' services, Graham said "No, Your Honor." Id. at 39. The court responded, "Are you sure of that?" to which Graham said "I'm positive." Id. Upon further cross-examination at the *habeas* hearing, Graham also recalled other matters addressed by the court at the July 6 guilty plea, including the maximum and minimum sentences for the charges, along with the reminder that the eventual sentence might deviate from any sentencing estimate provided by counsel.

Graham acknowledged that he and Downes talked right before the sentencing hearing. Graham indicated that, at the sentencing hearing, he heard the court read the drug weight of 1.37 kilograms of cocaine base, but he did not object. Graham testified that, after leaving his life and trust in his lawyer, he felt it was Downes' job and responsibility, not his, to object to the drug weight at the sentencing hearing. At the evidentiary hearing, Graham offered no evidence to rebut the drug weight attributed to him.

Downes testified about his representation of Graham at the evidentiary hearing. Downes explained that, starting in 2006, he represented Graham on a pro bono[1] basis after two other court-appointed attorneys had withdrawn from representing Graham. During that representation, Downes visited Graham at the prison either two or three times.[2] They met once before the April 28, 2006 guilty plea hearing. During that meeting, they discussed the charges, the maximum penalties, and any legal and factual defenses. They also discussed the concept of relevant conduct so that Graham would understand that the drug weight attributable to him was not limited to the drugs found just on his person.

---

[1] Although Downes was appointed pursuant to the Criminal Justice Act, he never submitted a voucher to the court for payment of CJA fees.

[2] Downes could not recall the exact number of visits. He speculated that Graham might have refused to see him once. He believes that during one visit, they reviewed discovery.

Downes further explained that he visited Graham again prior to the July 6, 2006 guilty plea for the Wyoming charges. The purpose and substance of that meeting was similar to the earlier one. Downes noted that, upon leaving both meetings, Graham appeared to have no misunderstanding about anything discussed. Furthermore, Downes noted that he and Graham listened to the government's audiotape, which captured Graham's involvement in the drug conspiracy. Downes perceived that the audiotape heavily influenced Graham's decision to plead guilty to the drug charges.

Downes further testified that he mailed the PSR to the jail and also reviewed the PSR with Graham at the jail. Downes contended that he asked Graham if there was anything in the PSR that merited an objection, and that Graham replied negatively. Downes recalled that they discussed that the 1.37 kilograms was calculated based on statements made by two other conspirators. Downes testified that Graham provided no evidence to contradict the conspirators' representations or any other evidence to dispute the drug weight of 1.37 kilograms. Downes further testified that, after the sentencing hearing, Graham said nothing about the drug weight.

### III.

Criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show that counsel's representation fell below an objective standard of reasonableness and that the counsel's defective performance prejudiced the defendant. Id. There is a "strong presumption that counsel's performance falls within a wide range of reasonable professional assistance." Id. at 689.

Graham asserts multiple reasons as to why Downes' legal assistance was ineffective. First, Downes allegedly visited Graham only twice at Orange County Jail during the course of

6

their attorney-client relationship. Secondly, Downes allegedly never reviewed the PSR with Graham in person. Finally, Downes did not object to the drug weight in the PSR either before, during, or after Graham's sentencing hearing.

The undersigned concludes that, while Downes perhaps failed to gauge his client's expectations about how often they would communicate in person or over the phone, Downes did not fail to provide his client with reasonably effective representation. Notably, Downes discussed with his client information about the charges and evidence. He reviewed in person with Graham relevant evidence, including the government's audiotape of Graham. Downes testified that he discussed with Graham the concept of relevant conduct and that the drug weight attributable to him was not limited to amounts found on his person. While the testimonies differ as to whether Downes reviewed the PSR with Graham in person, both parties agree that Downes mailed Graham a copy of the PSR in advance of the sentencing hearing.

Furthermore, Downes attended the sentencing hearing, meeting with Graham immediately beforehand. Both during and after that hearing, Graham did not communicate to Downes his insistence that the drug weight be contested. There is no suggestion that at any time prior to, during, and after that hearing, Graham provided Downes with any information with which he could contest the drug weight. Upon review of the transcripts of the plea hearing, sentencing and the evidentiary hearing, it is clear that there is no valid claim of ineffective assistance in this case.

Under Strickland, Graham also failed to establish any prejudice caused to him by Downes' representation. 466 U.S. at 687. Graham did not establish that his sentence would have been lower but for Downes' failure to contest the drug weight. Moreover, Downes testified

7

that the plea agreement he negotiated regarding the Wyoming charges surely shortened the length of imprisonment that Graham would have otherwise received.

Finally, Graham also seeks to undermine Downes' representation by suggesting that Downes himself had a drug problem. At the hearing, Downes addressed Graham's claims that Downes was involved in drugs. Downes emphatically denied the allegation that he consumed any illegal substances. He drew the court's attention to three drug tests taken on December 1, 2004; June 25, 2007; and January 10, 2008, all of which showed negative results for all drugs tested. He also denied that he frequented any so-called "drug areas" of town. There is no substance to Graham's claim in this regard.

## IV.

Graham also makes two additional claims, both of which lack merit. First, Graham claims that he made an involuntary guilty plea; specifically that his guilty plea was based on threats, intimidation or fear and Downes' assurance or promise that the drug weight would be objected to at the sentencing hearing. At the evidentiary hearing, Downes testified that he educated his client about the charges brought against him and the possible penalties he faced. At the July 6, 2006 plea hearing, Graham confirmed that he discussed the indictment and charges with Downes. Plea Hr'g Tr., July 6, 2006, at 11. There is no suggestion in the record that the guilty plea was based on threats, intimidation or fear as Graham now suggests. In fact, the transcript of both the guilty plea and sentencing hearing reflect the contrary. Accordingly, the undersigned finds the evidence does not demonstrate that Graham lacked "a full understanding of the charges against him and the possible consequences of his plea." Brady v. United States, 397 U.S. 742, 749 n.6 (1970).

8

Graham also contends that 18 U.S.C. § 3231 is invalid and thus, the district court lacked jurisdiction to hear the government's prosecution of the drug laws against Graham. Am. Compl., Nov. 14, 2007, at 3. Courts have cited 18 U.S.C. § 3231 often over the years without discussing any of the enactment problems purported by Graham. See, e.g., United States v. Beasley, 495 F.3d 142, 147 (4th Cir. 2007) (explaining that § 3231 jurisdiction necessarily includes the imposition of criminal penalties); United States v. Delgado-Garcia, 374 F.3d 1337, 1341-42 (D.C. Cir. 2004) (recognizing the creation and validity of § 3231); United States v. Helem, 186 F.3d 449, 451 (4th Cir. 1999) (citing § 3231 as basis for trial court's jurisdiction). In that light, the undersigned finds this jurisdictional claim to be without merit.

## V.

Based on the foregoing, the undersigned finds that Graham has failed to establish any credible evidence which suggests that counsel provided constitutionally deficient legal assistance. Further, the undersigned finds Graham's remaining claims for relief to be meritless. Accordingly, the undersigned recommends that the respondent's motion to dismiss be granted and that Graham's motion for relief pursuant to 28 U.S.C. § 2255 be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

Enter this 20th day of October, 2008

/s/ Michael F. Urbanski
Michael F. Urbanski
United States Magistrate Judge